This is People v. Smith, and Mr. Weidner for the appellant, and Ms. Miller for the appellant. You may proceed. Thank you. Good afternoon, Your Honors Counsel. May it please the Court. Jared Smith alleged an arguable claim of ineffective assistance of counsel in his pro se postconviction petition. And that is here at the first stage all that he is required to do. Now, what Jared Smith alleged was that his trial defense attorney failed to call a witness who was crucial to the defense case. This was a man named Bob Bailey. Now, Bob Bailey's testimony in this case was very significant, but it was significant largely because of the testimony of a second witness, a woman named Cynthia S. Worthey. Now, Ms. S. Worthey was an employee, at least she was a waitress, at the Eastside Tap, which was the bar that Mr. Smith was accused of robbing. Ms. S. Worthey identified Mr. Smith as the person who robbed that bar. However, when she identified him, she did not identify him by the name Jared Smith. She did not identify him by his face. She identified him by his voice. And she identified him as a person named Troy, whom she had met the evening before. It had been the first time she'd ever met this person. And she was introduced to this fellow named Troy by Bob Bailey. Now, Jared Smith has alleged here in his postconviction petition, had Bob Bailey been called to testify, Bob Bailey could have testified to the fact that he doesn't know Jared Smith. He's never met Jared Smith. He certainly couldn't have introduced Jared Smith to Cynthia S. Worthey because they're simply not acquainted. And this piece of testimony, this piece of evidence, would have made a significant impact on the case against Mr. Smith. And it's significant on a couple of levels. And the most obvious and the most clear level is that, of course, if Mr. Bailey did not introduce Mr. Smith to Ms. S. Worthey, clearly Ms. S. Worthey could not have been recognizing Mr. Smith as a result of that introduction. So her identification, which was solely based on her remembrance of this person's voice and general build from the evening before, whomever that person was, it's not Jared Smith. Bob Bailey comes in and says, I don't know him. I never introduced him to anyone. So that is one of only two people who actually were able to identify Mr. Smith as the robber. And notably, neither of them saw the robber's face. This is significant also for the reason, however, that it suggests some other things that impact some of the other witness identifications, particularly the fact that it would appear, at least based on the trial testimony, we don't have, there was no indication that Ms. S. Worthey knew or had some grudge against Mr. Smith. It would assume that if, as the Bailey testimony would imply, this was a mistaken identification, then it was a legitimately mistaken identification, not a fabrication. And that suggests that Ms. S. Worthey was introduced to someone. There was someone whom she was identifying. There was someone whose voice she recognized, someone who had been in the bar the night before. That person would then, of course, become a viable second suspect. This is someone then that at least one witness present identified. And particularly when we start looking at the identification testimony of the other witnesses, we start to see how significant this is. Scott Deacon was the other fellow who identified Mr. Smith as being present there in the bar as the robber. Again, couldn't see his face. He identified him just on build. And he identified him in the highly suggestive context of a one-man police show. Mr. Smith is in custody. Deacon is driven over. He looks out. He sees him. Okay, that looks like the guy. He said, that looks like him from the waist up. That's the guy I saw. Because the robber, I guess, was behind the bar at the time Mr. Deacon saw. Now, once again, if Mr. Bailey's testimony, if believed, taken as true, if a trier of fact were to find that testimony credible, we've already got one misidentification in this case. We have Ms. S. Worthey misidentifying Mr. Smith as this person that she met the night before. That raises a serious question as to whether the other witnesses involved in this could have been, in fact, mistaken in their identifications, particularly where you do have a suggestive context, like a show-up ID. There were a couple other witnesses who saw a man running through some yards. They didn't actually see the robbery. Sometime in between the robbery and when Mr. Smith was apprehended by the police, these witnesses saw a man running through. It was through several backyards. I believe he crossed a street and then continued on. This was actually about, recollection serves me, just about two blocks from where he was ultimately apprehended. Now, they did identify that person as Smith, although presumably they got a fairly limited look at him. He was on the run. He was moving. They also identified this person as carrying a gun. Now, this has always been a significant hole in this case and a significant question, because Mr. Smith was arrested just a few minutes later and just a couple blocks away. There was no gun. Six to seven police officers spent two hours searching the area where Mr. Smith would have, had he been the robber, the area through which he would have passed in order to arrive at where he ultimately was. No gun was ever found. So that does certainly raise a question. Again, could these witnesses have in fact been viewing someone else? What do we have a mistaken identification case here? That was Mr. Smith's testimony at trial. That was his case at trial. He maintained that he was walking from another direction. He had been out of town the evening before. He wasn't even around that night to be introduced at the bar. He was in Champaign-Urbana for a concert. And he testified, I was walking. And the officer who first saw Mr. Smith testified, he wasn't running down the street or anything. He was walking down the street. And then he saw the police and became nervous because of previous trouble he'd had with them. And that led to him taking off, the police pursuing him and arresting him. Now, in the face of these other identifications and in the face of no second suspect, that begins to look like a pretty questionable story. However, the plausibility of that story and the plausibility that these other witnesses could have been mistaken in their identifications increases significantly with this proposed testimony from Mr. Bailey. So when we're looking at the elements of, at this point, a first-stage post-conviction petition and an allegation of ineffective assistance of counsel, of course, we are using the familiar Hodges test. We are asking, is it arguable that counsel acted unreasonably? And is it arguable that the defendant was prejudiced? Now, notably, the state has not contested that it's arguable that counsel acted unreasonably. Mr. Bailey, counsel knew about Mr. Bailey. There was testimony regarding Mr. Bailey. He's obviously germane to the case. So that prong has not been contested. Where the real contest here has come, has come to prejudice. The state maintains that the evidence was overwhelming in this case, and therefore, just based on that, the claim should fail on the merits prong. However, again, I think when you can only view this evidence as overwhelming if you view it outside of the impact that the Bailey testimony could have on the rest of that evidence. If you look at it outside of the undercutting of the S. Worthy identification, if you look at it aside from the fact that the second identification from the bar was suggestive based on build, not a strong identification, certainly if you have someone who is similar enough in appearance, similar enough in build that Ms. S. Worthy could mistakenly identify them, it would seem entirely logical and entirely possible that someone else could do the same. And again, we've always had holes in this case. We have the question, where was the gun? We have this mask was found somewhere nearby, which the state pointed to as evidence of Mr. Smith's guilt, but there's nothing connecting the mask to Mr. Smith. They tested it. They couldn't get any profiles. They couldn't tie it to him. So we do have some fairly significant issues here, and Mr. Smith did give accounts for some of the other evidence. There was stories of a glove. There were some gloves that were found. He explained, I was in the area, I think it was two or three days before, doing some work. I cut myself. I borrowed some gloves. I cut myself. I tossed the gloves. I don't know where they went. I tossed them. It was in that area. So this is not, we're not looking at a case here where it would be, where the evidence is so overwhelming that at the first stage, where all we're looking at is the question, is it arguable? Is it possible that somebody could make out this claim? Is it a reasonably arguable claim? At this stage, yes, we've got that much. Obviously, there's investigation that still needs to be done. This is what the second stage is for. When we get an attorney on, someone who can investigate these claims, someone who can find out, track down the witnesses, and hopefully bring in some evidence. And at that point, you can make a much firmer conclusion. But at this point, the question is really just, is this claim indisputably meritless? And based on what we have here, the answer to that is no, it's not. The facts alleged are not delusional. They're not fantastic. This isn't something that it's impossible to believe. And the legal theory is sound. The legal theory, counsel could have called this witness. The record bears that out. Counsel knew who the witness was. I would note there was a finding by the court below. The court below stated that it was undisputed that Mr. Bailey was unavailable as a witness. And apparently, the court below, in reaching that conclusion, was drawing on a small bit of testimony from Ms. Essworthy, in which she stated she had recently visited Mr. Bailey in the hospital, and he was very ill. And as we replied in our briefs, and I won't belabor the point, but A, simply because a person is ill does not necessarily mean they're unable to testify. We don't have that kind of evidence in the record. And second, even if a person was unable to actually come into the courtroom, that does not preclude counsel from going and getting an affidavit. You can go and get testimony from the witness, and get sworn testimony from the witness in the hospital, and if that witness is in fact unavailable to come in, then that affidavit is admissible. So counsel had options to get this evidence into the record, and failed to do so. The third point that I would like to address here, the state also argues that this claim should be dismissed simply based on the lack of an affidavit from Mr. Bailey. And I would like to address the affidavit requirement and how that impacts this case here. Now, it is of course, it's well known and well accepted that an affidavit, a supporting affidavit of some kind, is required in most post-conviction petitions. Equally, however, the courts have held that there are exceptions to that. There are exceptions to the affidavit requirement where, for example, the record, the court file, and everything else is sufficient unto itself to present the claim. There is also, and that's noted, for example, in the case of People v. Hanks out of the First District. There is also, of course, an exception rooted in cases like People v. Williams and People v. Hall by our Supreme Court, which has said that when it is apparent, when we can look at the situation and just on its face we can see, that it would be either extraordinarily difficult or impossible for the pro se defendant to get the affidavit that is required here. Then we can excuse the absence of that affidavit because obviously we don't want to bar defendants from bringing claims simply because of inherent difficulties in acquiring the evidence. And in this is really a case, now those cases did mostly deal with, those two particular cases did deal with where the witness in question was an attorney, and particularly the defendant's attorney, who it was an effectiveness issue and it was their affidavit that was sought. However, the court did not limit itself. It did not simply say where it's an attorney's affidavit, okay, it's excused. The court said where it's readily apparent or where it's self-apparent, I believe was the word they used, that it would be extremely difficult or impossible for the pro se defendant to acquire this affidavit, then under those circumstances we can excuse the requirement. And this case presents a really unusual situation where it would in fact be readily, if it is readily apparent, that it would have been impossible, well, at the very least extremely difficult if not impossible for Mr. Smith to acquire this affidavit for the simple reason that the whole sum and substance and the significance of this testimony is the fact that he doesn't know the man. He's never met the man. He doesn't have a phone number. He doesn't have an address. He has no means by which to track this person down and acquire an affidavit from them. It's simply under the circumstances it would be essentially impossible for him to go and track down this unknown person, all he's got is a name, and acquire the necessary affidavit. And I would also note that this is, one of the things that makes this so highly unusual is that, of course, and really, I mean, what we're asking for here is really a very limited exception, because in, I would say, 95% of cases, if a pro se defendant stood there and told you, well, there's this witness who has evidence that's really good for me, he has testimony that's really good for me, but I don't know who he is and I've never spoken to him, that would be, it would be at best speculative. It would obviously be lacking in grounds. In this case, however, the particular evidence and the particular testimony which is significant and is important is precisely that fact. I don't know him. I've never met him. He doesn't know me. He's never met me. And that actually is something that you're not relying on speculation on Mr. Smith's part here. He can say quite clearly, no, I've never met Bob Bailey, I have no idea who he is, and therefore, had Bob Bailey been called to testify, he could have testified that he doesn't know me. And so this is really an unusual situation, but it is one where we have to recognize that the defendant really has no, well, again, it would be at the best extremely difficult for he, for him to acquire this affidavit from this unknown person. And therefore, under the reasoning of cases like Williams and Hall, this is a case where we can say, you know what, this is a time where this needs to proceed to the second stage, where an attorney who actually has some ability to investigate and who actually has presumably some resources, some knowledge of these sorts of things, isn't incarcerated and can go knock on doors if need be, where such a person can be put on the case and can investigate this. And so for those reasons, as we discussed in our briefs, we really do, this is a circumstance where that narrow exception really could apply to allow the, the case to proceed forward to the second stage, despite the absence of Mr. Bailey's affidavit. So if there are no further questions, I think at this point we would reserve some time for rebuttal, and thank you very much. All right. Ms. Miller? Good afternoon. May it please the court, defense counsel. My name is Perry Miller. I'm here on behalf of the state of Illinois. It is the state's position that the trial court properly dismiss the defendant's pro se petition at the first stage. The defendant's petition failed to allege any arguable claim of ineffective assistance of counsel. The standard for ineffective assistance of counsel is that the petition must allege that it is arguable that counsel's performance fell below an objective standard of reasonableness, and it's arguable that the defendant was prejudiced. Here, defendant's sole claim is that the attorney failed to call Bob Bailey as a witness. That claim is arguably not founded. At trial, it was testified to by Cynthia Ellsworthy that Mr. Bailey was suffering from pancreatic cancer and was unavailable. The trial court found that and found that Bob Bailey was not available as a witness, and that was uncontested. But even if, in light of the defendant not being, that testimony not being presented, the defendant cannot establish that he was prejudiced. The evidence was overwhelming that the defendant had no claim. His claim was not arguably based on fact or law. There was many witnesses that was able to testify that, several witnesses that testified that would have supported that defendant's theory had no basis. Defendant claimed that he was not the robber. He claimed that he was somewhere else with another friend. However, the evidence showed otherwise. Even if you set Cynthia Ellsworthy's testimony aside, there are other witnesses. Scott Dinkins testified, and he was present at the East Tavern at the time that defendant entered the tavern. Defendant came in, he had a, the person came in with a mask, he had a gun, they observed that he was in dark clothing. Dinkins testified that he could see around the circle of the mask that it was a light-skinned man. Also, Dinkins testified that at the time that he went to identify a defendant, he identified him based on his build, his size, and his clothing. Within minutes of the man, which was defendant, that left the tavern, the police apprehended him. Dinkins went there and was able to identify him. Also, the pathway that defendant ran when he was escaping from the East Tavern tap, along that pathway, the officers recovered several pieces of crucial evidence. They recovered the mask. It was in the yard, Nicholas Street, which was the pathway that one of the officers testified that defendant had run. They also, they also found the glove, which tied defendant, which was tied to defendant. Defendant had been seen by two witnesses running. They saw him stumble and fall. When he fell, apparently the glove that they recovered had a hole in it and blood. A DNA analysis showed that the glove and the glove with the blood fitted the defendant's blood type. Also, this would have been consistent with the testimony of the two witnesses who stated that they saw a man running and fall. And they later identified the defendant as that man. Further, you also had the testimony of the officers who saw the defendant. And at the time they saw the defendant, he looked at them and started to run. Defendant fled and said that he was escaping the officer. However, it is apparent that that was not the case, that he was just running because he thought the officers were doing something. The evidence showed that when defendant ran, he went to a homeowner's house, Zach Porter. At that time, the homeowner arrived and saw the defendant bending down by a welcome home sign at his back door. At that time, he saw the defendant was removing money from his pocket, putting it there. Defendant was found to have the amount of money that was recovered was $2,985. This was approximately the amount of money that Cynthia Ellsworthy had testified that on a normal day, the tavern would have $3,000 to $5,000. Also during the robbery, defendant removed a blue bank bag. A bag similar to that was also found just feet away from where defendant was apprehended. Further, defendant admitted that he did have the money, but that he had obtained this money from gambling and other means. He also attempted to explain that the gloves, he admitted the gloves that had his blood on it, the DNA blood, that he had received that injury not from fouling or stoning, but that he had been there earlier and had helped a person that was cutting down trees to, cutting down trees and that's how he was injured. Counsel was not ineffective for calling, not calling Bob Bailey as a witness. The testimony was, the record clearly shows that the testimony that defendant's identification was still established irrespective of if Bob Bailey was called as a witness. Also, Cynthia Ellsworthy, when she testified, she testified that from a photo array that she was able to also identify the defendant, she identified him. And she testified that she definitely knew the voice of defendant. She had an opportunity to hear him. He had come into the bar later that, on the evening prior to the robbery, and she had been introduced to him by Bob Bailey. And at that time, Bob Bailey, defendant came through the back door and Bob Bailey said that it was the, that he knew the defendant and introduced her. He, Bob Bailey, talked with the defendant shortly and defendant sat at the end of the bar. Cynthia Ellsworthy testified that she was 100% for sure that that testimony, that it was the voice that she had heard the night before, because when defendant was robbing the East Tail, he talked a lot, he was screaming and yelling. And it was on that basis that she said she knew that she had heard the voice and stated that it was the defendant. However, four days later when Detective Starks came and showed her a photo array, it had a photo of the defendant. She identified the defendant, she had known the defendant as Troy. That's what he was introduced to her as. But when she saw the picture, she confirmed this was the gentleman that was in the bar the night before. That gentleman was the defendant. The evidence clearly supported that, overwhelmingly supported that defendant's identity when you look at all of the evidence, that he was clearly the person that had been the robber. And the evidence rebuts that even if Ellsworthy's testimony, identification testimony, that this was the person she had identified as the robber, if you find that that testimony was not available to the jury, to the judge, that would still not have, that still would have established that the defendant did not associate with the robber. Ellsworthy did not assert a meritorious claim of ineffective assistance of counsel, because his theory was that he was not the robber, and that he was not there, and that Ellsworthy had never met him, and that she could not identify him as that. But all the other evidence established that the defendant was the robber, because you have Dinkin's testimony, you have the DNA, you have the DNA of the robber, and you have the DNA of the defendant. And the evidence that he was not the robber, he was found with a huge amount of money, and his reason for having that amount of money with him, an explanation for running, and his explanation for having the glove and emitting the glove with the DNA, the reason why he got the hole in it was because he was assisting a person in cutting the trees. That is completely without merit, and the facts are completely fantastic and delusional, and the court cannot do anything about it.  And as a consequence, we should probably find that the defendant failed to allege an arguable claim of ineffective assistance of counsel. Furthermore, the defendant failed to attach to his petition under section 122-2 an affidavit stating that Bob Bailey was the robber. And that Bob Bailey was not called as a witness, and that what Bob Bailey would have testified to. The defendant could have easily attached his own affidavit and stated what facts or what attempts he had taken to ascertain Bailey's testimony. And even if he attached the affidavit with his testimony in it, it still would not support his petition, that is, that he arguably sustained a claim under the post-conviction act. The cases that the defendant has cited, Williams, where the attorney, where the defendant did not attach an affidavit to his own affidavit. Those cases are distinguishable. In Williams, the claim was that the defendant alleged that his attorney had provided ineffective assistance of counsel because the attorney had misrepresented to him what he would be sentenced to. And the defendant alleged in his pro se petition with his affidavit that he did not attach an affidavit to his own affidavit. In that case, the court found that the only affidavit that the defendant could have attached to have approved this would have been the attorney's affidavit. And that it was self-evident that in these types of circumstances that the attorney would not, that type of affidavit would not be available. Well, that same is not true in the instant case. In the instant case, we're talking about Bob Bailey's affidavit. And the fact that the defendant did not allege in an affidavit that he was unable to find the defendant's, Bailey's address or that he made any attempt. So those cases, it wouldn't be self-evident that he could not get Bailey's affidavit. So as far as section 122-2 and the affidavit requirement, the state maintains that on that basis, the court could dismiss the petition. The state maintains that the trial court properly dismissed the defendant's pro se petition, that the defendant failed to meet the court's requirements. And that the defendant was unable to allege a claim, an arguable claim of ineffective assistance of counsel. In light of that, the state would ask that this court would uphold the first stage dismissal of the defendant's petition. Thank you. Thank you, Your Honor. May it please the court. There are just a few things I would like to address in relation to some of these things. There was mention about S. Worthy's testimony about the amount of money. Now, one of the things that was notable in this case is that nobody knows how much money was in the bar. There was no witness who could testify, oh, well, there was $2,900 in the till that day. Nobody knew how much money was in the bar that day. So we don't know if the amount of money that was found in or around near Mr. Smith matched the amount of money from the till or not. We know generally how much money the bar usually had, which is, again, it's circumstantial. It has some value, but it's not particularly strong. As far as several of these other things, I would like to address, there was a reference that the facts alleged in Oh, sorry. On one hand, it would be very unusual for somebody in Danville, Illinois to be walking around with $2,500 in cash. I haven't spent much time in Danville, so I couldn't speak to that directly. You know, Mr. Smith stated that it came from gambling and other sources. I wouldn't care to speculate on what those other sources might have been, but there are ways in which individuals sometimes find themselves carrying large amounts of cash, not always as a result of having just walked out of a bar with them. So while it is, you know, again, especially in light of the evidence as it was originally presented, in the absence of Mr. Bailey's testimony, it causes some problems. However, it certainly does not stray into the realm of the fantastic or delusional. I mean, we're not talking about something that simply stretches belief beyond where it could possibly go. And we are at the first stage here, and we are really considering the question, is this arguable? Is it just so indisputably meritless? Or could there be something here if we continue to investigate? There was also, pardon me, in reference to some of the affidavit issues regarding Williams and Hall. Actually, one of the things that makes this case actually quite comparable to Williams and Hall is, as the State argued, really the only affidavit Mr. Smith could have attached to his petition that would have supported his claim here, the only affidavit that would have really mattered, that was Bob Bailey's affidavit. And I would note that at no point in any of this has the State ever made any suggestion as to how he could have gotten that. How a man who is, admittedly, indigent and incarcerated, and lacks freedom of movement, could have gone out and found an individual that all he knows is his name and the general area that he lives. I don't know if he even knows he lives in Danville. He knows he was in Danville. So I think it's fairly self-apparent, as both Hall and Williams talk about, that this is an affidavit he simply could not acquire. And then beyond that, I would note, pardon me, there was a mention up here that the trial court found Bailey unavailable. And I would like to clarify that, just on that particular point, because at trial, the availability of Bailey was never addressed. It was never discussed. There wasn't a trial court determination on that. That was something that, in the order dismissing the first stage post-conviction petition, that was a conclusion that the PC judge reached. It may have been the same judge, but it was not a part of the trial proceeding. And as argued, clearly, even if the witness was not available to be brought into court, it would have been possible to get that testimony by means of an evidentiary affidavit, which is available under Supreme Court rule. So that being said, we would respectfully ask that this court reverse the circuit court's determination dismissing Mr. Smith's petition at the first stage and remand this case so some further proceedings can be had and this claim can be developed further. Thank you. I take this matter under advisement. Stay in recess until the ready.